the fourth district appellate court of the state of illinois has now convened the honorable eugene g doherty presiding good morning court is calling case number 4 24 0 9 2 9 people versus clayton bell i'd ask counsel for the appellant to please state your name for the record michael dubay morning your honors good morning and counsel for the appellate john barrett good morning your honors all right good morning mr dubay you may proceed thank you if it pleases the court your honors go count our counsel the case that's before the court has multiple reasons why the judgment of the trial court should be reversed i've got seven reasons i've listed in my brief i'll try to cover all those today but i'll focus on just a few of the main ones i'm open to any questions the court may have regarding either my argument or the brief today the first one i want to address is that the trial court failed to consider the youth based sentencing factors in this case mr bell at the time of the offense was 16 years old and he was sentenced when he was 18 years old but the factors should be going back to when the offense occurred at his age which was 16 the trial court in this case only considered aggravating factors in the mitigation and aggravation according to the what i called the adult standard he did not address the standards that are required for the youth based sentencing factors under 730 ilcs 5-5 4-5.105 in that case there's multiple factors that need to be taken into consideration and not only do they need to be considered they need to be articulated by the court and even in the court's order after my motion to reconsider the court merely said that he had considered these but he did not articulate them as he was required to do so had he considered these factors he would have looked at the different things such as the age of the impetuosity the level of maturity at the time of the offense whether the person was subject to outside pressures including peer pressure family pressure or negative influences it's clear in this case that it kind of coincides with the ineffective assistance of counsel because there was a there was an audio tape or actually a videotape of eight seconds in this case right before the crash that was played at sentencing and attorney sullivan uh the counsel at the time for mr bell didn't present any mitigation he didn't present any argument as to the context of that video he simply let the thing be played in its raw form and it was very negative to mr bell had the court considered the youth-based factors which he was supposed to do under morris these could have been presented as um elena was one of the passengers in this vehicle and she's obviously survived the accident she gave an account of what had taken place prior to the accident what had taken place on the video and stating that there was pressure all the people in the vehicle there was three other passengers in the vehicle besides mia who had passed away and as a result of this accident what took place was that if you just watch the raw video they appear to be begging him to stop slow down they're afraid of dying but elena put that into context that this was all a joke that's why mia or reese her brother was videotaping the entire incident and the court didn't consider any of this he simply took into consideration the fact that mr bell didn't have any prior criminal experience and so that was the only factor in mitigation he said factors in mitigation no prior offenses factors and aggravation needs to be uh done to he needs a jail sentence to protect the public and that's basically it so it was very clear if you listen to or you you read the transcript from the sentencing the trial court didn't consider at all the youth-based sentencing factors even though he says that he did in his in his order it's not articulated at all he simply went right to sentencing factors and mitigation aggravation that was it didn't articulate anything about that um on the record which is required um which leads then into and i can discuss that further if you want i just wanted to make sure we cover all the points here um that it gets into the next one that the court erred in applying the statutory factors and mitigation and aggravation uh because again he didn't consider anything even if he would have considered the factors and aggravation that are there there are other factors that would have played in besides the one that the court said the second one being the defendant did not contemplate his criminal conduct would cause or threaten serious physical harm to another the defendant acted or strong provocation he was provoked by the others to do this elena says that they were there saying catch air go faster they'd all been on this hill before this was something that was it's a it's really a a nuisance this it's a public nuisance this hill that should have been dealt with before there's been many accidents there but these kids do this all the time and that the provocation wasn't considered the defendant was uh the the factor in here that the defendant would be compensated or the survivors would be compensated that there was insurance here there were injuries and there was insurance paid out in this case uh the defendant's criminal conduct was result of circumstances unlikely to reoccur this is not something that's going to reoccur but that wasn't considered by the court the character and attitude of the defendant indicate that he is unlikely to commit another crime this was a situation that as a youngster 16 years old they're at a party they're making bad choices elena stated that all of them were drinking that night none of them should have been involved in this situation but they all played a part they all and and when elena stated that when reese and my client got ready to leave it was just going to be the two of but mia the sister asked that they could go along with them and so again that plays into the part that just wasn't contemplated this wasn't something that was thought out by him it wasn't something that he intended to have happen he didn't even want to drive but they kept asking him and finally he gave in to drive so that all plays in the court didn't consider any of these other factors and just the normal factors in mitigation so i believe the court aired in that part too the court aired when it's determined that mr bell was incapable of rehabilitation he's 16 years old and the court made a determination based off one failed test for marijuana and when asked about this attorney sullivan didn't have any response because he hadn't properly investigated this he didn't mitigate this at all had he done so he would have had an argument for the court to say well mr bell is still under stress and maybe he was coping with stress by smoking marijuana because on two instances as i found out and had his his coach testify to that in the spring and the fall mia's aunt had approached mr bell at these meets and made comments like i didn't know that killers participate in track or cross country and she was harassed them to the point that the that the coach had her removed from limestone she was not allowed to attend any more of these events because of her actions had mr sullivan investigated this at all and talked to his coach he would have discovered this and he would have had at least an argument for the court to say well this is why he might have done this but the trial court simply took it as being well you're under the scrutiny and because you've had this one positive test are you kidding me so he took that as to say he is not possible for being rehabilitated which is because as every study has pointed out that juveniles their brains are still developing they are the most likely to be rehabilitated because of their youth the development of the brain the development of everything about them is going on they are the most likely to be but the court just took that as well you're not eligible for rehabilitation and then gave him a 14-year sentence because of it the next thing i i talked about and this is this is a big one here is that during the sentencing the trial court allowed unauthorized representatives of me as a group to make victim impact statements i had attorney sullivan on the stand i asked him was familiar with the statute and he said that he was with the act and i said then why did you allow these why didn't you object well he didn't want to offend anybody and he acted like the court had discretion to allow other people to make statements even the trial court in our in our discussions made the statement that he thought he had discretion to let non-representatives make statements which is completely wrong larson points out and larson even goes into listing all of the people that i just lost my light here all the people that are not allowed to make statements including the aunt and all of these people who made statements her best friend even what was going to be uh her mother deborah's future husband he was unallowed to make a statement but he made one anyway and in making these statements uh mr manning and deborah the mother made false statements they made statements that my client was driving the homecoming parade float at the homecoming parade which again had mr sullivan done any kind of research on this and investigated this at all he would have found out that the track and cars country coach had borrowed mr bell's grandfather's truck and he was driving he even wrote a letter which i've added in there that he was driving the truck clayton was on the float and he was asked to beat her because he's an athlete he wasn't trying to show about the trial court's comment that he would have uh he would have found that to be more problematic to be riding on the float i i find that to be if you look at the entire transcript of the sentencing hearing and how he was offended by that to come back and say afterwards well i'd have been more offended by this i think that's just trying to clean it up i don't think that's true at all because he was he made multiple comments in the sentencing hearing about oh i bet you were really upset when you're up there with all your friends you're a real downer when you're on the on the float or driving the the float for the homecoming i don't think that i think it's disingenuous i don't think that that was an accurate statement i think that he displayed his displeasure in that and those statements being false they were proven to be false there's a picture of clayton which i've also included in the letter on the float and and then deborah made a comment that clayton refused to attend the that she was speaking at regarding underage drinking and the effects of that and the counselor who i brought in made it very clear that it was him he had approached clayton and asked him not to attend because he didn't want first of all deborah to feel under pressure he didn't want anything awkward in this so he asked him not to attend the assembly so there's two properly investigate this to provide the the correct mitigation but the court became biased you know it kind of all coincides together but in this case the the court had no ability to allow non-representatives to enter and make statements in this case they could have put their letters in but they can't make the statements and so um i think that that that was a big part of this and from this um and really it it put clayton in a very bad position and attorney sullivan knew about this and and the case law talks about that even if nobody objects the supreme court has said that they need the courts need to follow the statute and it's clear that the trial court did not follow the statute and that was an error that resulted in a violation of mr bell's rights and it should cause for this to come back just that alone should come back for resentencing we also get into the bias of the court now it's it's very clear if you if you read through the entire transcript how the court became biased and he just got more and more angry and biased towards mr bell as the sentencing hearing went along and he talked about in here about how he was personally touched by that video and i don't it just jumps out at you when you when you read that but he says you know that really bothered me i'm not just a judge i'm a person and you're going to find out how much it bothered me in a few minutes that's when he maxed him out in a sentence of 14 years so it's very clear that he is bothered by this as a person he's allowing his own feelings to come in not taking it from a judicial standpoint of not being biased and just looking at the facts well bias is a very powerful word it it is more equivalent to pre-judgment than to judgment so there's there's nothing in the record and i don't think you've made a suggestion that there was a pre-judgment made it's just this was the court's reaction to the evidence which seems more like judgment than pre-judgment and i agree with his your honor you're he was not i don't think he was biased coming in i think that because of the situation and it was very telling if you've watched that video and only thing you have is the raw video and what you hear without the context that elena could have provided it's very bad it's very damaging and i could see how a judge or any person could look at that and all of a sudden and when i say bias it's because it does change you from an open mind and looking at this to all of a sudden you have this human effect where oh my gosh that could be my child and and if somebody was begging for somebody to stop and or to slow down i don't want to die as a person and that's where the judge really came into this he brought it as a personal aspect he didn't look at it from a judicial standpoint and say okay looking at this video there's this and this but he took it as a personal standpoint and that's where i think it changes and i think the case law really points that out when you go if his impression was both accurate and complete that wouldn't be an inappropriate uh concern for the judge to have would it i think it is when when he expresses to them that as a person this bothered me because i'm not just a judge i'm a person and you're going to find out exactly how much it bothered me now he's saying as a person you're going to find out how much it bothered me in just a minute so he took it from the context of a judicial standpoint of i'm going to apply this to the statute i'm going to show you what it means to me personally and i'm going to make you pay for it and i think that's where it crosses over and becomes the problem and that's where i put in the different cases that i brought into this it really shows and they use the word bias because of that and i don't think that in theirs they say that the person comes in biased to get somebody but because of the actions that that took place in the hearing they can become biased because of that and no way am i insinuating that the trial court is biased in any um you know universal way in this case it happened because of the false accusations and everything that built up into that that would be my point there and i think and we it kind of goes into the excessive sentence i think the trial court aired when it issued a 14-year sentence it maxed out the sentence in this case this case actually allows for probation in extraordinary circumstances so it is a it is at 85 percent mr bell had no record none whatsoever this is a non-violent case he did not intend for this to happen so it's not intentional and his youth everything that goes into this there's it's i i do this every day i i don't see sentences like this i don't see somebody getting maxed out in a case like this on a first offense in there were this case because of everything in here it did have extraordinary circumstances it should have carried at least a strong consideration for probation but that was never considered which is going to be the next part because of mr sullivan's ineffective assistance of counsel because the judge didn't know all of these things that should have been brought in that should have been there that were right there he had a year to mitigate this clayton was still in school he could have went and found out all of these things i did it it didn't take me a year i did it very quickly mr sullivan didn't do it at all because he didn't want to offend anybody he also had a connection to mr manning which he hid from kristin bell when she hired him he tried to say that i didn't learn about mr manning being involved in this case until right before sentencing kristin clayton's mother questioned him at the start before she hired him because she didn't want this to happen where somebody would sabotage clayton's defense would work for him and it's very clear here that there was a connection uh mr manning's brother is his financial advisor mr manning works for a firm that mr sullivan does business with and he even told chris and he was going to float him some to see where his mind was at in this case so he had you know there's a conflict here with him but he wasn't honest about the fact that he he had met or had contact with mr manning but he didn't do anything he said that he tried to contact elena about the accident about the video but he never did i asked elena i had her on the stand she gave me an affidavit at no point did ever reach out to her and at the end of mr sullivan's testimony i pressed him on it again he had said twice during this testimony that he did try to contact her but at the end of his testimony i said and you didn't even try to contact her did you and he said no so he contrary he conflicts himself again in this all he had to do was talk to the people to school talk to his coach i'm sorry my time is my time up your honor uh it is okay thank you thank you sir all right mr barrett good morning your honors may it please the court john barrett representing the people of the state of illinois the 14 year sentence imposed by the trial court in this case was not an abuse of discretion it was a measured response to an act of profound recklessness that stole the life of 15 year old meaducic the defendant now asked this court to reweigh the evidence and substitute his judgment for that of the trial court something that it cannot do he raises seven issues on appeal but each one fails upon careful review of the record the case not involves not only the tragic loss of young meaducic but a pattern of poor judgment that continued even after that loss mr barrett is there anything in the record of the sentencing hearing to suggest that the trial court considered or was even made aware of the juvenile sentencing factors the the trial court addressed this at the motion to reconsider sentence right so let's do you agree there's nothing in that transcript that indicates that the court considered the juvenile factors correct your honor at the original proceeding note right and so later he says he did but didn't the court affirmatively tell us which factors which mitigating factors it was considering at the original hearing it just said the no criminal activity that's it for statutory i don't know how those two are compatible can you hear me can now you froze sorry it looked like there was a glitch um the the court is not obligated to weigh a mitigating factor less so than an aggravating factor especially where the factor these are not just mitigating factors these are mitigating factors that come up in serious crimes involving juveniles or emerging young adults correct and there's plenty of case law that suggests you need to articulate what what's going on i'm sorry justice doherty i didn't mean to interrupt i think we're going to the same place sure yes and uh the court was it acknowledged that it did not uh state sufficiently or it did not um state sufficiently artfully uh on the record that it had considered those factors but it it affirmed that it had considered the factors but but that's he told us the opposite at the hearing he told us that there's only only the one factor and one of the factors is age correct and lack of criminal history right well not just lack of criminal history we know he considered that the person's age that we we know beyond a doubt this is a young person right correct and and no mentions made of that well a person a person's age does not prevent a person from being uh even sentenced as an adult given the circumstances of an offense here the trial court looked at these as very aggravating more so than even considering age as a mitigating factor i know but we're talking about a scale right aggravating on one side mitigating on the other and he's saying there are none you're not talking about the weight here he said there are no mitigating factors isn't that error in black and white when he said that well the court is discussing the evidence weighing in favor of the factors so this is not sufficiently artful he acknowledged that may have not been sufficiently artful but he affirmed that he had considered the factors and and that these aggravating factors and aggravating elements superseded those what weight what weight do we know that he put on the defendant's age let's let's put aside level of maturity which might be fairly apparent but age is undisputable i have no idea how much weight he put on the defendant's age well if we look at a person's age impetuosity and level of maturity and just on its own objectively here that that would be going towards a defendant being impressionable being influenced by peer pressure and if you look at the video counsel is stressing uh what happened at the beginning of the video but many many miles later after after the circumstances had changed in that car and there was sheer terror going on defendant was not being influenced by you know coaxing to go faster catch air at that point he was traveling over 80 miles per hour against the cries and the shrieks of the people in the car i've watched that video it absolutely is chilling to watch but so this is not a peer pressure related event this is not that's a different factor my question was do we know how the court weighed the defendant's age or level of maturity we know that it considered it the court affirmed that it considered it we look at the consideration we yes even though at sentencing he said there were no other factors the court the court weighed the evidence it didn't uh it didn't say that age wasn't a mitigating factor but it didn't put weight i don't know when you say there's one factor and no others and he doesn't say age how how are we supposed to read that as concluding that he considered age well we have to look at the totality of the circumstances and the totality of what was considered here we have a 16 year old kid who made an adult choice and was sentenced that is that is the choice in every case involving a minor correct the kid that dumb kid that picks up a gun but those factors are always articulated in sentencing in every criminal case that comes before us simply because this is traffic doesn't mean it's not criminal i mean we've got a decade of case law regarding the difficulty that judges have in applying these youth factors and here's one where as far as we know other than the judge saying later oh yeah i considered those he didn't consider any of them and i think just age it's all the things that go with age and i think that's the point counsel to allude to the fact that he considered the youth based sentencing factors at a minimum he should have set forth the issue with regards to age and he does not do that until later on so how are when he says there's no other factors as justice doherty has pointed out how are we knowing that at a minimum age should have been discussed and it wasn't that he considered these i think that's more about whether he even considered the factors versus the weight i think you you have to look at the clarification the court made at the at the motion to reconsider sentence and the court went through and focused on key pieces of evidence that it felt overwhelmed some of those other mitigating factors so the court did clarify and it did expand that analysis but it wasn't sufficiently artful as it said at the original sentencing hearing now i know there's there's there's a question of considering and the court might find that the factor doesn't apply in a given case and i understand but what about the level of planning by the defendant before the offense is is there no is there some issue here that the defendant planned this well the defendant in the psi if we look at the psi he admitted that he drank six drinks prior to the accident and he had been smoking marijuana admittedly in the psi so you know the courts are clear on okay but driving involves conscious to sip and sip and sip and that defendant was doing that the language is the planning of the offense right now the offense itself no the offense itself so that's another factor that without a without a doubt is present in this case and we don't know what weight the trial court put on it if if any right we have what we have is the court addressing specific factors that it considered or that it felt weighed out in favor of the max sentence here so the court didn't go through and articulate each separate factor in a formulaic way and i don't even think the statute does require that it does require that the factors are considered if you look at the statute it says the court must consider these and the court did affirm that it had those factors and then it stressed the the other factors now i want to get to some of the other some of the other arguments that council is making regarding judicial bias the judicial bias argument i i think doesn't really have much traction because the trial the trial court here unlike the cases cited by defense council wasn't making comments personally disparaging comments about the racial identity of of this defendant or animosity in that way the the court's focus was on the evidence the circumstances of the it was human sure and the court and the court is human but as a human being who is a judge the judge made decisions based on on appropriate uh considerations so i don't think based on the so unless it's in my end i believe that mr barrett is frozen yes i cannot hear mr barrett as well i i can't either well if we get him back we'll add a little time to the end i i was saying that uh attorney sullivan at at the sentencing hearing he began the argument uh noting that he was not uh intending in any way to denigrate the memory of mia so uh there is a very very strong strategic choice in avoiding any arguments that would be to denigrate her memory or victim blame and then he goes into um stressing how exceptionally uh remorseful the defendant was that's a very broad use of the phrase victim blaming is it victim blaming to want to put in a more complete video well so the council strategically avoided putting forth evidence that he felt would be uh disadvantageous to his his client who was pleading guilty by putting forth evidence of of the victim many many many miles before the actual accident occurred which is not even connected to it the circumstances then were not the circumstances at the time of the the all all fair argument but it does seem like you can put in and ask that a complete video be put in without being uh critical in any way the victim yeah the focus of counsel um was strategic he affirmed that it was strategy in allowing statutorily inadmissible victims uh impact statements what's the strategy there now again there defendant uses a case people v larson where it was just a parade of unconnected victims here you had people who actually did have very close connections with the victim and it was a select statutorily ineligible do you agree with that right and and the statute is not a sword for defendants to defeat their sentences or to to uh overturn their their convictions this the statute itself says that it is a shield to protect victims it is not intended to be used as a sword for defendants to overcome their sentences or their convictions and the illinois supreme court has also said that so this is that's not a permissible request especially here where we have multiple victims who this wasn't a parade it wasn't a parade um if they didn't meet the statutory definition it's the requested relief isn't available under the statute pure and simple how does it enforce them it's enforced for the victim's rights that's the the enforcement mechanism is for the victims to ensure that they have voice that they can get up and make statements if if there is extraneous evidence or things outside of that that would impact the sentencing hearing there are other constitutional arguments that could potentially be made but just the fact of certain of these these victims making statements that's not a cause for a defendant to reverse the conviction or the sentence under the statute um getting back into the ineffective assistance of counsel um the the defense counsel did highlight the defendant's age that he was 16 at the time of the offense he did highlight that he also highlighted that defendant pled guilty to spare the victim's families from having to endure a trial and uh counsel did go through the statutory factors he argued that defendant didn't contemplate that his conduct would cause serious harm that was mentioned at the hearing we have 14 pages of of argument at the sentencing hearing on the part of counsel he talked about no prior criminal history that the conduct resulted from circumstances unlikely to to recur if you go through the record these were all mentioned by counsel he was very specific and he was very thorough in his arguments of course he forgot to any of the youth considerations other than the age and as a matter of fact didn't he say something like he thought the judge would do it he mentioned that that those were mandatory considerations that the the court was obligated to consider those in the statute the court's obligated to consider all the mitigating factors correct except when he makes his argument he doesn't make any reference to these stat these youth factors so i mean if it's the court's job can defense counsel just sit down and say well it's the court's job to consider all this stuff i don't really have to say anything and that well the the defense counsel specifically mentioned his age he did mention age he did mention um that he was taking responsibility he all of these things that play into the actual specific things the defendant was doing um were related to age so um and he affirmed that he believed that the statute itself was considered by the trial court and that the trial court would consider that um and then also uh defense counsel did argue for exceptional circumstances um and and giving his client uh probation he mentioned that and he also suggested impact incarceration and boot camp sentence so at the sentencing hearing he was you know uh putting forth these alternative arrangements outside of a lengthy prison sentence we may have our disagreements with this you know specific certain specific ways that defense counsel argued but if we look at the totality of how the the counsel was making these arguments the totality of it it was certainly uh he was functioning as guaranteed by the sixth amendment uh ineffective assistance claims required uh showing that counsel was just not functioning as as the counsel contemplated by the sixth amendment and here we don't have that we have a 14 page uh sentencing argument um where he goes through a litany of factors and uh he he definitely addressed many that are on point with the youth statute um and uh i want to make sure i address any other questions the court has uh before closing here do you think that uh perhaps he was remiss and not uh finding out about the fact that the defendant was not driving the homecoming float and did not refuse to attend a presentation made by the victim's mother particularly in fact that a counselor said you know that could be disruptive awkward i don't think you should go and so you've got a youthful high school student perhaps following the direction of a counselor and regarding the driving the homecoming float i think it's being on the homecoming float and actually driving it seemed to be different and could have a different effect on the judge those are those are two things that way it appeared to me weighed into the idea that he's walking around with his head held high and he's smug and he's happily going on engaging in these other activities and somehow he ought to be penalized for that well we know what the sentencing hearing um or the motion to reconsider sentence that the trial court did uh comment on um those statements that were made um by the victims or the victim impact statements regarding defendant driving the float and then that assembly and the trial court indicated that that wouldn't have made any difference whether or not defendant had been driving the float or that he was riding on the float and it wouldn't have made any difference well that would have made a difference about the float i don't think he said anything about the the assembly or presentation well in in the summation part of of of or in the conclusion part of the argument if the court found that it had considered the evidence the actual evidence it wasn't considering these other extraneous factors that were brought up in by defense counsel um one other thing i think it's important to look at the timeline here so we have in february of 22 that's that's the date of the fatal crash the court ordered pre-trial release conditions in may uh on may 11th of 22 the homecoming float was the fall it was fall of 2022 and by that time defendant was continuing to hang out with kids who were still using alcohol and drugs he himself tested positive for cannabis in november of 22 so from between february and november the defendant was still hanging out and using drugs we know that we know the trial court was concerned about that was it we should it have been yes this was an alcohol related the trial court know about the drinking yeah and then also in the psi defendant acknowledged that he had been smoking marijuana that night as well i asked about drinking yes how do we know that he continued to hang out with his friends and drink in the psi he talked about his associates it indicated that he was continuing to associate yes and uh and no rehabilitative efforts so that the trial court was confronted with a defendant who had all this time to pursue rehabilitation and did not do so and posed a risk to the community um defendant uh in the uh pre-trial release conditions he was not permitted to possess or consume any alcohol or illegal drugs um he was a moderate risk uh the uniform report alcohol and drug uniform report classified him as a moderate risk he admitted to enjoying risk-taking behavior and um probation identified that alcohol and substance abuse treatment was was highly recommended for this defendant and defendant did not pursue those things so the trial court was faced with a defendant who hadn't learned his and then even after he tested positive for for cannabis in november he was ultimately sentenced the following uh june and between the november and june there was still no pursuit so this was just a defendant who had dug his heels in and and wasn't pursuing any kind of rehabilitation so the court was admittedly exasperated by that why don't you uh all right i'm sorry i didn't mean but i i think that takes care of everything i had thank you your honors all right thank you uh mr dubeck thank you your honor the council is giving more argument uh regarding mr bell and the negative things about him than the prosecutor did at sentencing he's bringing up things that weren't brought up at sentencing about mr bell continuing to he alleging to drink and hang out with his friends that were drinking that was even brought up by the prosecutor or the probation at sentencing i will address the fact under larson he says that there's no remedy and it's only to protect victims larson specifically says that the violation of the act can deprive a defendant of fair sentencing hearing and thus violate his or her right to do process so to say that there is no remedy under the statute or under larson for a defendant is ridiculous it says it right there that's why there's case law on that that's why you have to follow the statute because you don't want to deprive somebody of a fair sentencing and violate their due process rights as far as the court's question regarding attorney sullivan and he simply relied on the court he even said it that he was relying on the court to go to the juvenile sentencing act i asked him he was asked if it was his job as an effective attorney to make sure that you put everything in front of a judge for mitigation your client's case and he replied yes he was then asked but you didn't do that did you to which he replied i didn't argue these if that's what you're saying he didn't make all these arguments that counsel's talking about he got to this 14 pages as him talking to the judge the judge asking questions about well did your client do these things yet and so mr sullivan didn't present anything he was tiptoeing around the whole time he didn't want to offend anybody and he was afraid that somehow that would turn the court off or offend somebody there which goes back to his association with manning and that attorney there his dad was a judge mr sullivan's father was a judge they all hung out on holidays drawing up and he just didn't want to offend anybody here so he didn't do anything he even talks about in there for this the statement in elocution he didn't even help him write that he said he showed up and got with mr bell 10 minutes before the hearing and just basically had mr bell do his own statement in elocution which is why when the judge started to question him on it he didn't know what to say he's a young kid never been in this situation before and here he is now having to explain to a judge how remorseful he is and then a judge kind of going after him saying i don't believe you but that's on mr sullivan that's his job even for an adult who's been in the process before you spend time with them on a statement elocution especially in a child who doesn't have any experience in this you show up 10 minutes before and expect to go over a statement elocution with him he's been out of custody he's had all this time he just didn't do it much like he didn't do anything else and counsel keeps mentioning this video like there was miles before this this is an eight second video of the crash there are no miles before i i think the point is that where the character of the conversation on video is different is miles before that eight second clip which is why i had elena do an affidavit about everything that took place how she got to the party how everybody was there at the party how everybody was drinking what all took place it's spelled out explicitly in my motion when i had her on the stand and in her affidavit to give the court an idea and that's what should have been done this isn't the this isn't victim blaming this is a situation where you have to articulate to the court why this video isn't what it says why it's not this raw video and elena was able to articulate that and i asked him how was he going to bring this out if he didn't talk to these people he said through mr bell and i said so you think the judge is going to believe mr bell isn't it a self-serving statement he's well probably so he didn't do anything he was entirely ineffective in this case he didn't do anything to try to help mitigate this case he took the money he showed up and that was it he could have done much much more as far as the rehabilitation part of this uh did he direct mr bell to go do these things as he was directed council's trying to act like mr bell is violating all kinds of rules he wasn't he had one violation for marijuana that was it which is explainable as i've already indicated in this case so in summing up your honor i think that that the the case shows in the totality of everything that took place that the the court didn't do didn't apply the correct uh statutes in this case mr bill uh mr sold was ineffective we would ask you to grant our motion your honor thank you all right thank you uh court will take the matter under advisement and issue a decision in due course and we now stand in recess